Good morning everyone. We want to welcome all counsel who are arguing virtually today. Thank you for being present and we look forward to your arguments. I want to thank the court staff here at the Sandra Day O'Connor Courthouse for their kind hospitality during the sitting in Phoenix and particularly want to thank our staff members who have helped us with our sitting here today. Judge Van Dyke and I would like to extend a warm welcome to our friend Judge Gilman from the Sixth Circuit who's sitting with us by designation. He's a regular, has joined us many times before, but Judge Gilman it's our privilege to have you here and thank you for your service to our court. So with that, we have a couple cases that were submitted on the briefs. We have two cases and we'll be hearing first from counsel in Bonelli v. Grand Canyon University, Ms. Heming. Good morning. Good morning, your honor. You may proceed. May I reserve four minutes on for rebuttal, please? Yes, keep an eye on the clock. That's up to you, but we'll try to remind you. Thank you, your honor. Good morning. May it please the court. My name is Krista Heming and I represent the appellant in this case, Kino Bonelli. This case arises out of a series of events that occurred at the Grand Canyon University campus in Phoenix, Arizona, where the appellant, Mr. Bonelli, was a student. There's no denying that this is a uniquely situated case. Normally in 1983 cases, we are dealing with a citizen who was arrested or had their rights violated by a police officer. But in this case, we're talking about a student who was not necessarily arrested, but was stopped and had his property seized by Grand Canyon University Police Department. There was no arrest that took place, but what did happen was Mr. Bonelli had his ID seized and then they went and filed a report that Mr. Bonelli failed to comply, meaning that he failed to give over his student ID. And this, of course, was problematic because they had his student ID. So in retaliation of this, there was another incident that happened in July. And then after that, Mr. Bonelli had a disciplinary warning placed on his record based upon these Grand Canyon University police reports that were filed. And he was then subjected to a year of having this disciplinary warning on his record where he felt that he couldn't go on campus, that he was going to any point in time be kicked out. So he was really dealing with that. And it was really based upon this initial incident of a false report that he failed to comply, which again, he did comply because they took his ID. So Mr. Bonelli then went in and was able to get the disciplinary warning removed from his record, but it took him a year and that was in August of 2018. So in this case, we're really talking about the statute of limitations. The lower court has dismissed the case based on a statute of limitations, because as we know, the 1983 draws their statute of limitations from any type of sitting personal injury claim at the state level. And this year, in this case, it was two years. So our argument is that the claims didn't actually accrue until that disciplinary warning was removed from his record. And we rely on Heck V. Humphrey because Heck V. Humphrey says that if you are being prosecuted for a claim, a false claim, and that is decided that the charges were dropped, then you can bring your 1983 claim for Melissa's prosecution. And in this case, we're alleging the same. It wasn't until Mr. Bonelli's disciplinary warning was removed from his record that his claim actually accrued and that he was able to sue under the 1983 law. The language in Heck in some of our cases talks about implying the invalidity of a conviction or a sentence. And here, Mr. Bonelli was the subject of disciplinary proceedings by his school, but that's a little different than Heck. You're right, your honor. And that is why I did concede at the beginning that this case is uniquely situated and that we are dealing with a student on a campus rather than a citizen going through the legal process. But the way that GCU has set up their campus, it is almost like they have taken on the characteristics of a municipality in that they have a police force and GCU's security campus police has been recognized as a police force and that they're allowed to, with impunity, write these police reports that affects each student's way that they live. Is there still any authority that would suggest that Heck can be extended to essentially a university's internal review of a student's actions? No, your honor. Again, this is a very uniquely situated case, but I think that because GCU has set themselves up in a way that they have their own police force that polices their campus and is able to write these types of reports that affect the way that the student is able to go about their business on campus. I mean, they issued a BOLO, a be on the lookout for him and excluded him from campus activities at one point. So they were acting as the police department within a university campus. Counsel, so we have the challenge that I'm not sure I've ever seen Hecht applied outside of the criminal context. And I think your answer was you don't have any showing us that the other challenge, but I don't mind hearing more about that. But the other challenge I think we have is even putting that aside. I mean, the whole premise of Heck seems to be you're talking about, well, they have a police force and that this disciplinary action was bad for him and everything, but that's not really what Heck goes off on as I read it. Heck, the premise of Heck is that there are some inconsistency between the conviction or the and the claim that they're trying to make here. And what I'm trying to figure out is even putting aside that he didn't have a conviction or sentence said he had this disciplinary warning on his record, but what is the inconsistency between having that disciplinary warning and being able to bring his fourth amendment claim? Even in the criminal context, we've said that Heck doesn't apply where there wouldn't actually be an inconsistency. And I'm having trouble seeing what the inconsistency is between like why couldn't he have said, why couldn't the disciplinary warning have been valid, right? He did something wrong, but the police also did something wrong and had violated his fourth amendment rights because we've got other cases in the criminal context to say, if those two things aren't inconsistent, Heck doesn't apply. So in this case, we do allege that the disciplinary warning was wrong and that it should never have been entered because they relied on a false police report. That's different counsel than that's different, whether it's right or wrong. The question I'm asking is assuming it's assuming it was correct, like assuming the disciplinary action was correct. I think that's what we do with Heck because you assume that it's correct until it's gone. I still don't see how that's necessarily inconsistent with the violation of his fourth amendment rights, which is the claim that you're saying should have been told by Heck. In other words, why couldn't he, I mean, in theory, couldn't he have said, yeah, I did something wrong that merited a disciplinary warning, but the police officers over-responded or responded inappropriately and violated my fourth amendment rights. And if that's the case, there's no inconsistency between those two things. And so the whole premise that's putting aside, whether or not Heck only applies in a criminal context, there has to be this inconsistency and I'm not seeing it. I think what the justice is asking is, is that if there's an inconsistency between the actions of the officers and the outcome of the case, I'm not entirely sure what the justice is asking, but my position is, is that even if there was say, my position is of course, that Mr. Benelli did nothing wrong. He did not. Chief, I can help you with it. As I understand, disciplinary warning was for behaving in a manner that created a disruptive, hostile, or offensive education environment, right? That's what he, that's what he was given a disciplinary warning for. And let's assume for a second, obviously you don't think this, but let's assume for a second that he had actually done something that created a disruption or created a hostile or offensive education environment. You can still have your fourth amendment rights. If I was a student and I was doing that, acting inappropriately, therefore actually meriting this disciplinary warning, the police could still violate my fourth amendment rights, right? Like they could still, you know, just bust into my, you know, you know, grab ahold of me, seize me inappropriately, something like that. And under heck, those two things have to actually be inconsistent for the heck bar to apply. And only if the heck bar applies, do you get tolling. So I'm just not seeing the inconsistency. In a normal case, counsel, in a normal case, you have a heck bar that, you know, you say somebody was arrested. What we see all the time is somebody was arrested and they're saying excessive force. But if, as I recall, under California law, you can't make out an excessive force claim if the police properly, you know, had acted properly. So because you can't be charged excessive force unless the police acted properly. So the police acting properly is part of the claim. And that's why the heck bar applies, because it would be directly inconsistent because you're saying the police acted improperly. And in order for you to be convicted of the excessive force claim, the police had to have acted properly. So there's a blatant contradiction between those two things. But I don't see the contradiction on here, on this disciplinary warning. And your position in that, you know, you can be maliciously prosecuted and have done something wrong, but there still be a violation of your Fourth Amendment right. And I understand that. And I think that in this case, we just don't have that. And I agree that there's that, you know, Mr. Bonelli, his rights were violated throughout the entire process. But I do understand that we are uniquely situated in that we are in a university and not, you know, police on the streets. But what I do want to give as an alternative remedy to just allowing it to go back to the court, you know, I do request that there be a remand. If we were to go back to the lower court and allow for an amendment of the pleadings to bring in a malicious prosecution claim, maybe that would clear up some of those issues. Because in this case, we do believe that there was an argument is that there was the disciplinary warning or the conviction was based upon these police reports that just weren't true. So there was prosecuted maliciously past the point of the first. But if we were to do that, your malicious prosecution claim would, in order to make out a claim, I think under HECT, it goes back to what it would have to be, even if you replayed that, it would have to be inconsistent. And I still haven't heard from you. In other words, you'd have to deal for us to even consider doing that. You have to tell us that, well, if I pled this, it would act, it would actually be inconsistent. And I'm still not hearing why there's an inconsistency between what happened to him here, even if you somehow said that the disciplinary warning was a malicious prosecution and his ability to make out a fourth amendment claim. I still think you have to have that inconsistency, even if you replay. Okay. I know you wanted to save some time for rebuttal, but I wanted to ask you, and we'll give you that time. I wanted to ask you a question on the implications of the scope of your argument, because what I hear you saying is that you want to extend HECT to essentially the university disciplinary context on the theory that it's similar, allegedly similar, to a prosecution. How far does the logic go? In other words, there are lots of state actors that conduct internal investigations or internal disciplinary reviews of their employees or others. Does this, if we agree with you, are we basically going to be delaying the accrual of statute limitations in lots of cases that are kind of outside the traditional HECT context? No, your honor, I don't think that we would be. I do think that because my argument is that our position is that in this particular case, GCU is uniquely situated in that they have a police force. They hold themselves out as this municipality-like entity in which they have a police force that is and if need be, arrest them and hold them. They have been recognized. They have a police chief. So I don't think it's that far of an extension that's going to go down this slippery slope. I do believe that it is one that it should be extended to the situation because of the way that GCU or Grand Canyon University has situated itself. With that, I'd like to reserve the rest of my time. Absolutely. Thank you. We'll hear from the appellee. Good morning, sir. Good morning. If it pleases the court, my name is Nishan Wild. I'm here on behalf of Grand Canyon University defendants. Listening to Mr. Bonelli's counsel's statements, the court has hit it right on the head. There is no inconsistency in this case. Mr. Bonelli wants the court to believe that overturning a disciplinary warning from Grand Canyon University is a necessary element before he could bring any First Amendment claim, any Fourth Amendment claim, or any racial discrimination claim. Imagine the implication of that. What if GCU had never overturned the disciplinary warning? Would that mean that a student could never bring a First Amendment or Fourth Amendment claim anytime they receive a disciplinary warning? That makes absolutely no sense whatsoever. He's saying there was a process that was taking place at the university and his view is that process should have run its course before I was required to bring a Section 1983 claim. So you have a number of good arguments here, but I'm not sure that one carries that much weight with me. Sure. My point is this, and I think the court was getting to that, is say that there is a valid disciplinary warning. That does not prevent Mr. Bonelli from bringing a claim under the First Amendment, under the Fourth Amendment or for racial discrimination. If you look at the specific elements for each of those claims, there is not a necessary condition to overturn the disciplinary warning before he brings those in. Heck, the claim did not exist and therefore could not accrue and the statute of limitations could not begin because the conviction had not been overturned. So that is an absolutely net element to occur before you could even bring a claim or before the claim even accrues. Here, I have a question. I look at this a little differently maybe than Judge Van Dyck. I mean, the warning was based presumably on these police reports that the plaintiff claims were false. So if the 1983 actions are based on these Fourth and Fourteenth Amendment violations for what she claims are improper police reports, false police reports, why wouldn't that be inconsistent with the warning that was issued by GCU? Why wouldn't the police reports be inconsistent? Right. I mean, if the police claims are based on what the police did and what the police did was the basis for the warning, then her claim would be we have to set aside this warning in order to pursue the claims against what the police did because otherwise it would be inconsistent. Well, no, not necessarily because this is a disciplinary warning. First of all, it was a warning. It wasn't a punishment. There was nothing in this warning that says you can't come to campus. You can't take part in all the activities at GCU. It was simply saying, please don't do this again or something may happen in the future. But it's not inconsistent with a Fourth Amendment claim because let's just assume that the allegations by Mr. Bonelli are true, that it was an unreasonable search and seizure. Well, at that very moment that it happened, he is fully aware that his rights were violated. And therefore, because he's fully aware, that is the moment right then and there when the statute of limitations begins to accrue. And all of this conduct happened between February 2017 and August 2017. And so at the very latest, Mr. Bonelli was required to file the complaint by August 24th, 2019. He did not file it until January 20th, 2020. The ultimate point is there was nothing stopping Mr. Bonelli from realizing his injuries and filing claims much before he actually did file his claims. There's no requirement that the disciplinary warning, which again was just a warning, be overturned to file those claims. And that's why HEC does not apply here and cannot apply here. And as Mr. Bonelli's attorney concedes there, and I haven't seen anything either. There's no case law to extend HEC to a disciplinary warning. Is there any case that you can say that the published case that says you can extend HEC to a warning? No, I will concede that no, but there are, you know, several cases, Yasmin v. Coulter, which I cited in the answering brief, that addressed this exact argument and rejected it. In Yasmin v. Coulter, the Ninth Circuit Court of Appeals ruled that statute of limitations began to accrue on the date of the surges, on the date of the stops. In Yasmin, the appellant was making virtually the exact same argument that Mr. Bonelli is making in this case. So counsel, let me see if I can ask the question slightly different than Judge Gilman asked. I think he's hitting on a very important point. So his claim is that the disciplinary warning that he was acting in a disciplinary warning, I'll just say was he was acting inappropriately somehow, that Mr. Bonelli was acting inappropriately. And that's what he got the disciplinary warning for. His Fourth Amendment cause of action is among other things for the fact that like they inappropriately seized his private property. I think they kept his ID card, right? What I mean about the inconsistency is, I don't know why you necessarily would have, the police officers would have the right to keep this ID card, for instance, even assuming he was acting inappropriately, right? I don't know that you can't, a student that's acting inappropriately, you don't get to take their ID card and keep it. And so that's what I mean where I'm not sure that there's, he still could have made out that Fourth Amendment claim for violating, for seizing his private property. And that would not be inconsistent with the fact that he was acting inappropriately. Is that, am I right in thinking that, do the police officers get to keep the ID card? When they stop somebody, even assuming they stopped them appropriately because the that within a week or so it was returned and he was able to, he was able to go back on campus. That happened in February of 2017. And he was able to go back to campus, complete his education through April of 2017 and actually receive his degree, his bachelor's degree. But the, I think the more important point is a violation of a Fourth Amendment right or a First Amendment right is not mutually exclusive of acting poorly. Those two things can happen at the same time. Mr. Bonelli could have a warning for acting poorly and disrupting the campus and the officers could theoretically violate his Fourth Amendment and First Amendment rights. That when that happens. Yeah, I think that's what I'm thinking. Not just that those two things could happen, but they could both be true that he had acted poorly or inappropriately somehow, but that the officers that also in responding to that violated his Fourth Amendment rights. Is that what you're saying? Or are you, so they could both be true at the same time. Is that right? They could both be true and in the Fourth Amendment claim, therefore, could proceed, even if the disciplinary warning was true or not true. Right, but the reason for that is not the inconsistency or the consistency. The reason is, I think, a little bit different than the one you're arguing because heck is concerned with the clash of two very big statutory schemes. Section 1983 in the habeas context and what we don't want in that context is for somebody to bring a 1983 claim to imply the invalidity of their condition or sentence because the judgment is that Congress through the habeas statutes has made that the domain for bringing that type of That logic doesn't apply here, but I don't think it has to do with whether there's just any kind of tension or inconsistencies because it's two fundamentally different schemes at play in this case, as compared to heck. I would agree with that, your honor. Moving on, I mean, I would like to bring up the fact that the fact that these injuries were realized between February 2017 and August 2017 is not actually in dispute. The only issue in dispute in the appellant's open brief is whether heck applies, is whether the statute of limitations has been told because of heck and the alleged comparison and similarity with the malicious prosecution and wrongful conviction claim. We argued that the injuries were fully realized at the latest of August 24, 2017. We argued that in the district court, the district court agreed with us and ruled that way. And Mr. Bonelli never challenged that and did not bring this up in the opening brief and is therefore waived that argument. In addition, the opening brief does not in any way implicate the 1981 or 2000D claims. So we believe those claims have also been waived because they have not been brought up on appeal. And so we believe that the court should affirm the decision to dismiss based on statute of limitations, because as we've argued and as the court in the district court agreed with, and was not disputed here, is that the injuries were fully realized as of August 2007, which started the clock on the statute of limitations, which as Mr. Bonelli's counsel has admitted is two years because the Arizona personal injury statute of limitations is two years. One final issue I would like to address is the alternative remedy that Mr. Bonelli's counsel has suggested. First of all, that was never brought up in any of the pleadings. It was never brought up in any of the briefs. So we believe that has been waived, but also it's futile to do that. Even if this were remanded to go back to malicious prosecution claim, again, like the court was saying, there's simply no inconsistency. And like the court is saying, it's a completely different framework between a disciplinary hearing at university and a court where someone has been accused, tried and convicted of a crime. So I just don't, not only is it waived, but I just don't think that is applicable in this situation to remand. That's all I have. Thank you, counsel. We're going to hear rebuttal and Ms. Heming, we'll give you four minutes. You had asked for that. We kept you on the run. I want to make sure you have the opportunity to deliver your full argument here this morning. I don't believe I'll need my full four, but I just wanted to. Let me ask you, I just heard this about this. Why in the world did your client wait so long to sue? Even under your theory that he had to wait until the disciplinary warning was lifted, which was August of 2018, he still had almost a year after that where he still would have been within the two years of the disciplinary warning in August of 2017. So why did he wait for a year and five months even after the warning was lifted before filing suit? Yes, your honor. While there's no facts that have been pled in any of the briefs or the pleading, the situation was that Mr. Bonelli was trying to resolve this situation internally. He was trying to get the disciplinary warning removed. He did reach out to different people within the university to resolve. And at one point there was even an offer of settlement by the university to him, which he denied. And then he went and sought counsel. So there were some other events that were taking place that were not in any of the pleadings and have not been played before the court. But I just wanted to be responsive to your question as to why he waited. It's just sort of from your viewpoint. I mean, based on just pleadings, sounds like he has a pretty good claim against the university. But, you know, there's no question he waited until January of 2020 to file suit. And that's beyond the two years from the disciplinary warning being issued. So to save you, you're up to green, right? Yeah. And additionally, he was still pursuing his graduate degree and he was worried about retaliation and other issues with the GCU police department because he did have to attend classes on campus. So, again, those weren't things that were pled in the pleadings or in the briefs, but I just did want to be responsive to your question. In conclusion, is our position that Huckabee Humphrey should be extended to the situation because GCU is uniquely situated as a campus that sets itself up as a municipality in which they have an internal disciplinary structure based upon their campus police department reports. This disciplinary warning was based upon these police reports, which we do believe are false. The alleged information that was proven to be false should not have been even considered in their realm when they were making their decision on the disciplinary warning. And it did act as a probation for Mr. Bonelli. He was afraid to have any type of run-in at all because he knew that it could lead to his expulsion and him not being able to complete his degree. So at the very least, we do ask that the court remand the case back to the lower court with the ability to amend the pleading or to allow it to continue on. Thank you for your time today. Thank you, Ms. Seming. I want to thank counsel for both parties for the briefing and argument. They're greatly appreciated. The matter is submitted.
judges: Gilman, BRESS, VANDYKE